IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-155-D

**Shelvie Jean Weeks**,

                    Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of
Social Security,

                    Defendant.

**Memorandum & Recommendation**

        Plaintiff Shelvie Jean Weeks instituted this action on April 4, 2014, to challenge the

denial of her application for social security income.  Weeks claims that Administrative Law

Judge Kelly Davis wrongly determined that Weeks's impairments did not qualify as an

intellectual disability under Listing 12.05(C) because ALJ Davis provided no valid reasons for

determining that Weeks failed to show that she experienced adaptive deficits prior to age 22 as

required by 20 C.F.R. Part 404, Subpart. P, Appendix I § 12.05.  Both Weeks and Defendant

Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a

judgment on the pleadings in their favor.  D.E. 25, 27.

        After reviewing the parties' arguments, the court has determined that ALJ Davis reached

the appropriate decision.  ALJ Davis identified substantial evidence to support her conclusion

that Weeks failed to show that she suffered the functional limitations contemplated by Listing

12.05 during the "developmental period" prior to age 22.  Therefore the undersigned magistrate

judge recommends[1] that the court deny Weeks's Motion for Judgment on the Pleadings (D.E. 25) and grant Colvin's Motion for Judgment on the Pleadings (D.E. 27).

## I. Background

On December 7, 2007, Weeks filed an application for supplemental social security income on the basis of disability that allegedly began on April 4, 2005. Tr. at 101, 243; D.E. 22. After her claims were denied at both the initial stage and upon reconsideration, Weeks appeared before an ALJ for a hearing to determine whether she was entitled to benefits. *Id.* at 179. After the hearing, the ALJ determined that Weeks was not entitled to benefits because she was not disabled. *Id.* at 108. Weeks appealed this decision to the Appeals Council and was denied on February 16, 2011. *Id.* at 124. Weeks then filed a claim in this court, and her case was remanded for a new hearing on June 12, 2012. *Id.* at 130. The court's order remanded the matter for further consideration of whether Weeks's alleged impairments met or equaled Listing 12.05(C). *Id.* at 130, 145-50.

On March 21, 2013, ALJ Kelly Davis conducted a new hearing on Weeks's claim pursuant to the court's remand. *Id.* at 29–47. ALJ Davis issued a decision finding that Weeks was not disabled within the meaning of Listing 12.05(C) between her application date of December 7, 2007, and August 16, 2011, the date on which Weeks was awarded social security benefits under a separate application. *Id.* at 32.

In reaching this decision, ALJ Davis found that Weeks had "seizure disorder, headaches, obesity, depression, and borderline intellectual functioning" that caused more than minimal limitations in her ability to perform work-related activities. *Id.* at 16. However, the ALJ also found that, during the period of Weeks's current application, she did not have an impairment or

---

[1] The court has referred this matter to the undersigned magistrate judge for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

combination of impairments sufficiently severe to qualify under one of the Medical Listings. *Id.* Specifically, she found that Weeks had a full-scale IQ of 70 with verbal and performance IQ scores of 66 and 80, respectively. *Id.* at 20. The ALJ also found that Weeks had graduated from high school where she allegedly was enrolled in special education classes. *Id.* at 21. Weeks's academic records were destroyed, so the ALJ could not confirm any details about Weeks's participation in or performance during her special education classes. *Id.* The ALJ regarded Weeks's testimony about specific details of her participation in these classes "vague and unconvincing." *Id.*

ALJ Davis also found that one of Weeks's medical examiners noted in 2007 that Weeks "could read and write without difficulty and was able to perform all her activities of daily living independently." *Id.* In addition, Weeks was able to pass a test to get her driver's license and continues to drive and live alone. *Id.* During her hearing, Weeks also testified that, prior to the time she started having seizures in 2003 (at the age of 36), she was able to "fix meals, clean house, and raise her children independently." *See id.* The ALJ found that the evidence of her lack of compliance in taking anti-convulsant and anti-depressant medication, her lack of interest in increasing amounts of anti-convulsant medication after periods of allegedly increased seizure activity, conflicts in the evidence about the effectiveness of her prescribed medications, and her continued driving and other independent activities undermined the overall credibility of Weeks's testimony about her debilities after her application date of December 7, 2007. *Id.* at 22.

Weeks again sought Appeals Council review of the ALJ's negative determination and was denied. *Id.* at 1–3. On April 4, 2014, Weeks filed a complaint instituting the present action. D.E. 6.

## II.    Analysis

### A.    Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  If the Commissioner's decision is supported by such evidence, it must be affirmed.  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.    Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005).  The analysis requires the ALJ to consider the following enumerated factors sequentially.  At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied.  At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities.  At step three, the claimant's impairment is compared to those in the Listing of Impairments.  *See* 20 C.F.R. Part 404, Subpart P, App. 1.  If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed.  However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments.  If the claimant cannot perform past relevant work, the analysis moves on to step

five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C.      Weeks's Impairments and Listing 12.05(C)

Weeks challenges ALJ Davis's determination that her impairments do not meet or equal Listing 12.05(C) (intellectual disability), especially her contention that "the record does not demonstrate that [Weeks] has deficits in adaptive functioning initially manifested in the developmental period." Tr. at 21; Pl. Mem. in Supp. at 1, 8; D.E. 26. Listing 12.05 sets forth a two-part inquiry for determining intellectual disability: first, a claimant must satisfy the diagnostic description of the impairment, and second, a claimant must meet the required severity level, which may be accomplished by satisfying any one of four categories labeled A through D. Specifically, the Listing provides that:

> Intellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.05. The claimant has the burden of demonstrating that her impairments meet or medically equal a listed impairment. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue,* 667 F.3d 470, 476 (4th Cir. 2012).

Where, as here, the paragraph C severity criteria are at issue, the Fourth Circuit has described the first showing as Prong 1 and the requirements of paragraph C regarding IQ level and a significant work-related limitation as Prongs 2 and 3, respectively. *Hancock,* 667 F.3d at 473. The Prong 1 diagnostic criteria for an intellectual disability includes two components—deficits in adaptive functioning and an onset before age 22—that must both be satisfied in order for the Listing to apply. *Id.* at 475. The American Psychiatric Association defines the "adaptive functioning deficits" at issue under Prong 1 as "limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue,* 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia,* 536 U.S. 304, 309 n.3 (2002)); American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000) (hereinafter "DSM–IV").

Under Listing 12.05, however, an "intellectual disability" is "a life-long, and not acquired, disability." *Laur v. Astrue*, No. TMD 08-112, 2010 WL 481318, at *3 (D. Md. Feb. 4, 2010) (citations omitted). Accordingly, "[e]ven if the record clearly establishes that the plaintiff meets the requirements of section 12.05(C), a finding of mental retardation cannot be warranted without a finding that the plaintiff manifested deficits in adaptive function before age 22." *Justice v. Barnhart,* 431 F. Supp. 2d 617, 619 (W.D. Va. 2006) (citation omitted).

Prong 2 of this analysis requires a valid IQ score between 60 and 70 in the verbal, performance, or full-scale area. *Hancock,* 667 F.3d at 473. Here, the parties agree that Weeks has a qualifying IQ score, thus satisfying Prong 2 of the required analysis. After diagnostic testing, examiners determined that Weeks had a full-scale IQ of 70, a verbal score of 66, and performance IQ score of 80 on the Wechsler Adult Intelligence Scale ("WAIS-III") test

administered in 2003. Tr. at 20. In cases where the Wechsler test produces multiple IQ scores, the Commissioner uses "the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.00D(6)(c); *see also Rainey v. Heckler,* 770 F.2d 408, 410 (4th Cir. 1985). Weeks's results indicate a verbal IQ score of 66, placing her within the 60 through 70 range required under Listing 12.05(C).

Prong 3 requires the ALJ to find that a claimant has a "significant work-related limitation." *Id.* Under Prong 3, the required physical or mental impairment "need not be disabling in and of itself." *Branham v. Heckler,* 775 F.2d 1271, 1273 (4th Cir. 1985). Therefore, this requirement is satisfied when the ALJ finds that a claimant has other severe impairments. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989).

The ALJ found that Weeks had other severe impairments sufficient to satisfy Prong 3. Specifically, the ALJ found that Weeks had "seizure disorder, headaches, obesity, depression, and borderline intellectual functioning" that limited her ability to perform work-related activities. Tr. at 16. These severe impairments satisfy the "physical or other mental impairment imposing an additional and significant work-related limitation of function" necessary under Listing 12.05(C). *See Luckey*, 890 F.2d at 669.

The crux of the parties' disagreement, therefore, is under Prong 1: whether the ALJ had substantial evidence to support her view that Weeks did not successfully prove she had deficits in adaptive functioning initially manifested before age 22. *See* Tr. 21. Weeks presents three arguments to support a contrary view. First, she argues that she successfully proved adaptive deficits in functional academic skills, work, and social/interpersonal skills. Pl. Mem. in Supp. at 8; D.E. 26 (citing *Atkins*, 536 U.S. at 309 n.3). She points to her testimony about her history of special education and ongoing limitations in doing math (Tr. at 63–64, 396–97), her failure to

hold a full-time job (Tr. at 55), her difficulty obtaining a driver's license (Tr. at 64), and her lack of friends and hobbies (Tr. at 61–63). Pl. Mem. in Supp. at 8-9; D.E. 26.

ALJ Davis, however, noted that, though Weeks allegedly took special education classes, she successfully graduated from high school.[2] Tr. at 21. She also found Weeks's testimony about the specific details of her participation in special education "vague and unconvincing." *Id.* In addition, the ALJ pointed to evidence in the record that Weeks "could read and write without difficulty" and that she was "able to pass a test to get her driver's license." *Id.* Taken together, these facts constitute substantial evidence to support ALJ Davis's conclusion that Weeks did not have sufficiently severe deficits in academic functioning to meet or equal Listing 12.05(C).

Weeks also argues that she proved adaptive deficits in work and social relationships because she has never held a full-time job (Tr. at 38, 55), has no hobbies (Tr. at 62), and avoids being around other people (Tr. at 61–63). The ALJ, however, noted that the evidence shows that Weeks could "perform all her activities of daily living independently" and that, before she started having seizures in 2003, "she was able to fix meals, clean house, and raise her children independently." Tr. at 21. The ALJ also acknowledged that Weeks's issues with depression might lead her to have "some difficulties relating to fellow workers and supervisors and tolerating the stress associated with day-to-day work activity," but that her "depression is primarily situational in nature and responded well to treatment with medications, which [Weeks] admitted caused no significant side-effects." *Id.*

While Weeks's lack of full time employment and significant social interaction may be evidence of adaptive deficits under the standard adopted in *Atkins*, this evidence is counter-balanced by the ALJ's findings that Weeks independently managed herself and her three children

---

[2] The ALJ noted that Weeks's participation in special education classes could not be confirmed because her high school destroyed her academic record. Tr. at 21.

prior to 2003 when she began having seizures. ALJ Davis's decision makes clear that she considered the import of conflicting evidence and found that, on balance, Weeks did not prove that her social and employment limitations suggested adaptive deficits manifesting prior to age 22. *See Hancock*, 667 F.3d at 476 (discussing an ALJ's duty to consider the import of conflicting evidence and the court's duty not to reweigh such evidence and substitute its judgment for that of the administrative tribunal).

Second, Weeks challenges the ALJ's emphasis on Weeks's history of living independently and raising children as grounds for concluding she did not have adaptive deficits manifesting prior to age 22. Pl. Mem. in Supp. at 10; D.E. 26. She argues that this court has recognized that "the fact an individual is able to work, complete household chores, and raise a family is not inconsistent with mild mental retardation." *Shaw v. Astrue*, 4:08-cv-132-D, 2009 WL 2486932, at *6 (E.D.N.C. Aug. 13, 2009) (quoting *Radford v. Astrue*, 5:08-cv-421, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009)). These cases prohibit an ALJ from taking a person's ability "to work, complete household chores, and raise a family" as *necessarily suggesting* that she does not have an adaptive deficit. *See id.*

ALJ Davis's decision, however, does not simply infer from Weeks's history of working in the home and raising children that she did not have adaptive deficits prior to age 22. Her decision emphasizes Weeks's *independence* in her activities of daily living. The ALJ notes twice in the same paragraph that the evidence shows Weeks's ability to do a range of activities independently prior to the onset of her seizures in 2003. *See* Tr. at 21. Her decision also highlights Weeks's graduation from high school, her ability to pass a driver's license test, her lack of difficulty in reading and writing, and her lack of credibility on many aspects of her past and present condition. *Id.* at 21–22. On the basis of these facts taken together, the ALJ

concluded that Weeks's "activities are not consistent with the degree of functional limitation contemplated by Medical Listing 12.05." *Id.* at 21. Furthermore, these determinations constitute substantial evidence to support ALJ Davis's determination that Weeks did not prove she had adaptive deficits manifesting before age 22.

Lastly, Weeks contends that the ALJ erred under the Fourth Circuit's decision in *Luckey.* Weeks argues that this case held that the ALJ must presume that, absent any evidence of change in a claimant's intellectual functioning, the claimant's intellectual functioning remained stable over time, including during the developmental period. Pl. Mem. in Supp. at 11; D.E. 26. Weeks, however, misinterprets the holding in *Luckey.* There, the Court of Appeals held that an ALJ must only presume that a person's IQ remained constant over time absent some evidence of change. *See Luckey*, 890 F.2d. at 668. Here, the issue is not whether Weeks's IQ changed or remained constant, but whether she successfully showed deficits in adaptive functioning manifesting prior to age 22. For this reason, *Luckey*'s presumption does not apply and Weeks's final argument is without merit.

In sum, ALJ Davis's findings regarding Weeks's lack of credibility on the details of her participation in special education and other matters, her graduation from high school, her ability to pass a driver's license test, her ability independently to raise children, and independently to engage in all her activities of daily living constitute substantial evidence supporting the conclusion that Weeks did not successfully prove adaptive deficits under Prong 1 of the Listing 12.05(C) analysis.

## III.     Conclusion

For the forgoing reasons, the undersigned recommends that the court deny Weeks's Motion for Judgment on the Pleadings (D.E. 25) and grant Colvin's Motion for Judgment on the Pleadings (D.E. 27).

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 7, 2015.

Robert T. Numbers II

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE